## G. WOOD MAGEE v. JAMES D. N. TURNER ET AL.

### [46 South., 544.]

1. TAX TITLES. *Period of redemption. Code 1871, § 1701, Laws 1872, p. 5. Laws 1874 (Called Session), p. 14. Purchase within period. Stranger to title.*

   The purchase from the state of forfeited tax lands, by a stranger to the title, within the period allowed for redemption, operates as a redemption inuring to the benefit of the owner.

2. SAME. *Confirmation. Collateral attack. Code 1871, § 1753, Code 1880, § 578.*

   A decree, under Code of 1880, § 578, confirming a tax title derived from the state, is void and presents no defense to an ejectment suit by those claiming under the owner, when it appears that the state conveyed to the complainant, a stranger to the title, within the two years allowed for redemption.

FROM the circuit court of Lawrence county.

HON. JESSE B. WEBB, Special judge.

Turner and others, appellees, were plaintiffs and Magee, ap-

pellant, defendant in the court below, the action being eject-
ment.

The opinion of the court states the facts.   Under Code 1871,
§ 1701, the time allowed for the redemption of lands forfeited
for taxes was two years; under the act of 1872 (Laws, p. 5)
there was no right of redemption to persons not under disabil-
ity; and by the act of 1874 (Laws, p. 14, Called Session) this
provision of the act of 1872 was repealed, and the provision of
the Code of 1871 restored.

The conveyance by the state to Hickman, appellant's grantor,
on August 10th, 1876, recited a sale for taxes on May 10th,
1875, but did not recite for what years' taxes the land was sold,
but the agreed statement of facts disclosed, however, that the
sale was for the taxes of 1874.

*McWillie & Thompson,* for appellant.

The appellees cannot hope to defeat a reversal herein without
maintaining both of the following propositions:

1. The purchase by Hickman from the state in 1876 was a
mere redemption enuring to the benefit of the original owner
of the land.

2. The decree of confirmation recovered by him in 1888 was a
nullity and could be attacked collaterally because, the state being
without title after the so-called redemption, no title was im-
parted by its deed, and there was therefore no tax title to be con-
firmed.

We ask brief consideration of the question of whether or not
the property can be said to have been redeemed by Hickman's
purchase within the two years allowed for redemption.   If we
are right in our contention that it was not redeemed, then there
remains no basis for the conclusion of the court that the con-
firmation of Hickman's title by the chancery court was with-
out effect, a matter which we will further along consider on the
assumption that there had been a redemption.

It is important to be clear on the question of whether or not

Hickman's purchase was in fact, as it purported to be, a purchase, though an invalid one, of the land in suit and not a redemption of it, in two aspects of the case, for (1) if it was not a redemption, the title would still be in the state and such outstanding title would defeat plaintiffs in ejectment or it would be in the defendant as Hickman's grantee by reason of the confirmation decree, and (2) if the land was not redeemed by Hickman's purchase, all objection to the confirmation proceeding wholly disappears.

In discussing the question of whether or not there was any redemption of the land we ask that it be borne in mind that there can be an invalid purchase which is not a redemption. No one can dispute this proposition, nor deny that the law has attached incidents to the acts of purchasing and redeeming lands forfeited to the state for taxes which characterize the two transactions and differentiate the one from the other. For instance, he who redeems land parts with his money forever when it goes into the public treasury, but he who purchases is, and always has been, entitled to get back his money and interest, etc., in case the title which the state undertook to impart to him by deed should prove invalid. No one can deny that Hickman was entitled to get back his money and interest, etc., if his title was invalid, and if he had that right he was a purchaser. Code 1871, §§ 1718, 1919.

It is also important to observe that it took more money to redeem than it did to purchase, and, as the auditor's deed imports a purchase, he must be taken to have required the payment of no more than enough to purchase. We cannot assume a redemption where neither the auditor nor the applicant had a redemption in view and the former did not require payment of enough to effect a redemption. Under the Code of 1871 in force at the time a purchaser was required to pay only twenty-five per centum damages while to redeem the owner had to pay fifty per centum damages. Code 1871, §§ 1701, 1707.

A noted text writer declares that there can be no redemption

unless the full amount required by law is paid. He says that the maxim *De minimis,* etc., has no healing virtue in such case, that while courts construe the law liberally in favor of the owner, his acts must be construed like those of the officer and purchaser where duties are imposed upon them; and that the right of redemption is statutory and is subject to all the limitations and conditions imposed by law. Blackwell on Tax Titles (2d ed.), sec. 719, pp. 671, 672; Vide also *Murdock* v. *Chaffe,* 67 Miss., 740, 7 South., 519.

It is not necessary, however, to press our argument to the extent of insisting that there is no redemption where the owner in the effort to redeem falls short of paying the necessary amount. It is enough for us to show that the law has in its requirements so differentiated a purchase from a redemption as to plainly mark Hickman's transaction as a purchase.

It has been expressly decided by this court that an invalid purchase during the period allowed for redemption does not in the slightest degree affect the owner's right to redeem, which could not be the case if the purchase were a redemption for two redemptions are not allowed and one redemption would seriously interfere with a subsequent redemption or effort to redeem. The auditor would be absolutely without warrant to receive on account of the redemption of land taxes, etc., on land that had been already redeemed. If a tender of the redemption money by the owner during the period of redemption is sufficient notwithstanding a previous sale by the state, surely payment would be good, and the right of the owner to redeem it, as thus manifested, is in no wise affected by a sale to a stranger during the period of redemption. *Caruthers* v. *McLaran,* 56 Miss., 370, 383.

The case of *Shattuck* v. *Daniel,* 52 Miss., 834, contains no intimation that a purchase within the period allowed for redemption operates as a redemption. What that case decided, and all that it decided on the subject, was that one who purchased within the period of redemption did not acquire the state's title.

In other words, the title was still vested in the state, and not extinguished by redemption, and Shattuck, the purchaser, on whom rested the burden of showing title, could not maintain his bill to confirm his tax title acquired from the state. The real question decided was that a sale for taxes levied in aid of the rebellion was void. As the state had no title it was unnecessary to decide that the complainant had not acquired the state's title and but scant consideration seems to have been given to that matter.

Similarly the case of *Faler* v. *McRae*, 56 Miss., 227, is not decisive of the question here involved. There one Faler, the plaintiff in ejectment, had recovered judgment against an administratrix and at the sale under an execution issued thereon purchased in 1875 a ninety-nine year leasehold estate vested in the intestate at the time of his death. After the rendition of his judgment the heirs of the intestate conveyed the leasehold to the defendant. The land was sold for taxes in March, 1876, after it had become the property of Faler and in December, 1876, he, the owner, purchased it from the state. The court held that the leasehold was a chattel interest that devolved on the administratrix, that Faler's judgment was a lien from the date of its rendition prior to the conveyance by the heirs of the intestate and vested title in him, and therefore as he had title in either case it was certainly immaterial whether his purchase within the period of redemption should be treated as a purchase or as a redemption, though the court without going into the matter declared that the purchase was effectual as a redemption. As a redemption he had title under his sheriff's deed; as a purchase he would have had title under the state's deed.

There is a difference in the attitude of the owner and a third person when undertaking to buy during the period of redemption. If the latter receives a conveyance as a purchaser there is no reason why he should be regarded as redeeming for an owner who is still delinquent, but the former, the owner, is under a duty to pay the taxes and when he receives such a conveyance it

is in consequence of having done what he ought long before to
have done, and he is to be treated as redeeming merely with no
right to demand a return of his money if the sale was invalid.
His payment would prevent the acceptance of the amount of the
taxes by way of redemption from any other person but payment
by a stranger by way of purchase would not be in the way of a
redemption for as held in *Caruthers* v. *McLaran,* such a pur-
chase in no wise affects the owner's right of redemption.    We
can find no case where a purchase during the period of redemp-
tion by one not the owner, or claiming to be the owner, but al-.
together a stranger, has been treated as a redemption and the
important differences in the characteristics and rights of one
purchasing and one redeeming hereinbefore mentioned fully ex-
plain the absence of such a decision, which is further and more
fully explained by the language of the statute providing that
"the owner of such land or any one for him" may redeem and
thus in express terms limiting redemption to owners or those act-
ing for them.    Code 1871, § 1701.

Where land is *redeemed* during the period of redemption by
the owner for himself or some other person for him, or by some
one who believes or claims himself to be the owner, the redemp-
tion enures to the benefit of the real owner.    *Jamison* v. *Thomp-
son,* 65 Miss., 517, 5 South.. 107.    And the same may be said of
a "repurchase" under the act of 1877 which is the same as a re-
demption.    *Green* v. *Williams,* 58 Miss., 752.

But these decisions have no relevancy to a *purchase* during
the period of redemption by a stranger to the title like Hickman,
who is not pretended to have been the owner or acting for him
or that he claimed to be or believed himself to be the owner.    He
was emphatically a purchaser and cannot lose his status and
rights as a purchaser by construction.    27 Am. & Eng. Enc. of
Law (2 ed.), 849.

We respectfully insist that the court below did not give to the
decree confirming Hickman's claim of title under his tax deed
due effect.    As the record sets out simply that his title under

the auditor's deed was confirmed by the chancery court of the
county, all presumptions must be indulged as to the regularity
of the decree, and that the record of the present cause shows
that Hickman had no title to be confirmed is entirely outside of
the question in controversy, for the validity and effect of the
decree of confirmation cannot be affected by objections set up in
another suit at a remote subsequent period. No defense was
made in the confirmation proceedings although the parties were
brought in by publication, and the final decree confirming Hick-
man's claim of title was based upon a decree *pro confesso*.
From the course taken by the proceeding there could have been
no other evidence before the court except the auditor's deed to
Hickman exhibited with the bill. That deed showed a sale to the
state on May 10, 1875, and did not show for what year's taxes
the land was sold. The sale on May 10, 1875, was not void un-
less the lands were delinquent for 'taxes accrued prior to 1874
and we are not informed what the proceeding showed as to
that. It is very absurd to say that the sale on May 10, 1875,
was void because as agreed by counsel the land was sold for the
taxes of 1874. Lands were not salable in May, 1875, under
the abatement act unless delinquent for taxes that accrued
prior to 1874, but the act provided in express terms that they
should be sold for the taxes of 1874 unless sooner redeemed by
payment of the taxes for that year. Acts 1875, p. 14. We
quote from *Caruthers* v. *McLaran*, 56 Miss., 381, as follows:
"The sales under this abatement act, for the taxes of 1874, are
directed to be made on the 10th of May, 1875." Moreover the
state had title under the sale in February, 1875, and it was
wholly immaterial that the auditor's deed recited the sale in
May, 1875. This leaves the matter to be determined by the fact
that the auditor's deed showed that he sold the land in August,
1876, less than two years after the sale mentioned therein, which
is by no means conclusive of the fact that the state's title was
inchoate in August, 1876, for in the very case in hand there
had been an earlier sale to the state on which Hickman had a

right to rely and if that sale had been in 1874 for the taxes of 1873 instead of in 1875 for the taxes of 1874 the period of redemption would have expired at the date of his purchase. With a right to rely on any other earlier sale to the state for taxes it cannot be said that the sale mentioned in the auditor's deed conclusively fixes the date from which the period of redemption runs. The complainant in such a proceeding on its being objected that the period of redemption had not expired would always be allowed to show that there had been a misrecital as to the sale and that the state really had title under an earlier sale and sold to him after the period had expired. If, however, we are to take the recital in the auditor's deed as fixing the day of sale as in May, 1875, the period of redemption had in fact expired when he sold to Hickman in August, 1876, for before May, 1875, the act of March, 1875 had restored the old law allowing only one year for redemption. Acts 1875, p. 16; *Caruthers* v. *McLaran*, 56 Miss., 381.

There being nothing before the court to show that the land was not salable under the abatement act and the period of redemption allowed as to lands sold under that act having expired at the date of the auditor's deed there was no reason for withholding full credit from the decree or that can challenge its correctness unless we can look to objections made twenty years afterwards in an ejectment suit without having the record of the confirmation suit before the court.

There is a case decided by this court quite pertinent to the one in hand. It was a proceeding to confirm a sale recited to have been made on the assessment of 1890, and the court refused on demurrer to treat it as conclusive that the assessment was made under the void act of 1888, the "Madison Act." *Coffee* v. *Coleman*, 85 Miss., 14, 37 South., 499.

The court held that on a bill charging a valid assessment by a complainant whose deed in statutory form was *prima facie* evidence of a valid sale, it could not be assumed that the assessment was under the void act though that act regulated assess-

ments in general at the time the assessment was made. In other words the demurrer admitted the facts alleged in respect to title just as the default confessed them in the present case; and on the established rules of law we must indulge every presumption in favor of Hickman's bill to confirm that would be requisite to sustain the decree.

We desire especially to call the attention of the court to the fact that under our statute those claiming to have title under a tax deed as well as those who actually have title as a matter of law are entitled to maintain a proceeding for confirmation, and that such proceeding is different in this state from what it is in those jurisdictions where the sale is not complete and no title vests until the sale is confirmed. It is an independent proceeding intended to give absolute assurance and security to claimants under tax deeds after affording original owners an opportunity to show whatever objection may exist to the rendition of the decree of confirmation. When under our statute the chancery court has acquired jurisdiction of the subject matter and the parties, defendants who neglect the proceeding and allow the bill to be taken for confessed do so at their peril, and the decree is final unless set aside by bill of review or reversed on appeal. It would be subversive of the most important principles of law to hold that such a decree can be collaterally attacked; and seems to us as unreasonable as it would be to allow a plaintiff in ejectment to show that he had paid to the defendant before foreclosure decree the mortgage debt for which the property had been sold and bought in by defendant. If the taxes for which the land in controversy was sold had been paid when due, the sale would have been void, but certainly that would be an objection to be made in the suit to confirm, and could not afterwards be made the ground of a collateral attack upon the decree of confirmation taken upon *pro confesso*. The proceeding for confirmation of a tax title under our statute is in the nature of one to quiet the title claimed by complainant and we apprehend that the courts would not listen with much

patience to a plaintiff in ejectment who after the defendant in ejectment in an ordinary equity suit had recovered a decree quieting his claim of title against all claim of the plaintiff in ejectment, should object that defendant in ejectment really had no title when the decree was rendered. If such were the fact, the plaintiff in ejectment who had been given his opportunity to show it in the proceeding to quiet title, would be estopped by the result of that proceeding.

Our statute not only extends the remedy to persons having but also to all claiming to have a tax title and we think the court below must have overlooked the provision to the effect that when a bill to confirm is "taken for confessed" and a decree entered, "such decree shall vest in the complainant, without any conveyance by a master or commissioner, a good and perfect title at law and in equity to said lands in the same manner as against any title held or claimed at the time of said tax sale *as if it had been conveyed by the holder of said title to the complainant, by duly executed conveyance with warranty of title,* and such decree, shall in all the courts of this state be held as *conclusive* evidence that the legal and equitable title of said land was thereby vested in said complainant, as against all persons claiming the same under title existing prior to said sale for taxes." Code 1871, § 1753; Code 1880, § 578; Code 1892, § 498; Code 1906, § 548. The statute of itself settles the conclusiveness of the decree of confirmation. The proceeding would be meaningless and futile if objections to confirmations that might have been made therein but were not made could be afterwards availed of in a collateral attack on the decree. The lawmakers evidently intended nothing of that sort.

*John H. Arrington* and *S. B. Waddell,* for appellees.

As to the purchase prior to the expiration of two years the period of redemption would never by lapse of time, ripen into a purchase, and after the redemption by Hickman on August

10, 1876, the state parted with whatever lien for taxes or inchoate title it obtained by the sale to it, of the lands in controversy, first Monday of February, 1875, for the taxes for the year 1874, and hence there was nothing for appellees to do, but just exactly as they did do, demand their estate upon the death of the life tenant, for certainly they were not called upon to appear and contest with Hickman the right of possession during the life of the life-tenant, Mrs. Cutrer; that was clearly Gwin's duty, as he was the owner of the life estate, upon the ground, in possession and the lands assessed to him in 1874, and need not have given possession to Hickman, unless he so desired. *Shattuck* v. *Daniels,* 52 Miss., 834; *McRae* v. *Faler,* 56 Miss., 227; *Caruthers* v. *McLaran,* 56 Miss., 371; *Green* v. *Williams,* 58 Miss., 752; *Jamison* v. *Thompson,* 65 Miss., 516, 5 South., 107.

Counsel for appellant cite Code 1880, § 578, relative to the confirmation of tax titles and insist that appellees are now concluded or estopped by said decree of confirmation November, 1888.

This cannot but be a void decree of confirmation, predicated of a sale admitted by appellant to have been void. The sale of May 10, 1875, as to the invalidity of which see *Kennedy* v. *Sanders,* 90 Miss., 524, 43 South., 913, can never be rejuvenated by a mock proceeding, however solemn it may appear. Under Code 1880, § 578, and the admitted facts of this case, Hickman was without the pale and scope of this section, providing that "Any person holding or claiming under a tax title, lands heretofore or hereafter sold for taxes, when the period of redemption has expired, without redemption of the same, may proceed by bill in the chancery court of the county in which the land lies, to have such title confirmed and quieted, and shall set forth in his bill his claim under such tax sale, etc., etc."

Now appellees contend that, the land having been redeemed by Hickman within two years from the first Monday of February, 1875, he had no cause of action, and nothing to confirm— *nihilo fit nihil,* and the very deed under which he was claiming,

the auditor's deed of August 10, 1876, predicated of the void sale of May 10, 1875, the sale confirmed in November, 1888, and manifestly "the claim set forth in his bill" for he did not and could not have relied upon the sale in February, 1875. He was not claiming under that sale, hence we claim Hickman had no cause of action, and no right whatever, under Code 1880, § 578; the chancery court had no jurisdiction of the subject matter and all its process and orders were an absolute nullity and binding upon no one. *Smith* v. *Gardner Hardware Co.*, 83 Miss., 654, 36 South., 9; *Bradstreet Co.* v. *Jackson*, 81 Miss., 232, 32 South., 999; 23 Cyc., 740 B; *Risley* v. *Phenix Bank*, 83 N. Y., 318.

We dispute the proposition that it took more money to redeem than to purchase. Code 1871, §§ 1701, 1707, cited by appellants do not apply, as Code 1871, § 1701, was modified and instead of 50 per cent. damages were made 25 per cent. See *Caruthers* v. *McLaran*, pp. 378 *et seq.*, a marvellous collation of the revenue statutes and certainly a correct interpretation of them.

Mayes, J., delivered the opinion of the court.

This was an action of ejectment, brought by James D. M. Turner and others against G. Wood Magee, for the recovery of a certain tract of land described in the declaration. The land originally belonged to one Donalson F. N. Turner, Sr., who died about the year 1854, leaving a last will and testament wherein the lands in question were devised to his wife, Mrs. Jane Turner, for life, and after her death the remainder to go to a nephew of the original owner; that is to say, Donalson F. N. Turner, Jr. Mrs. Jane Turner subsequently married one Hyman Cutrer and moved to Texas, and while there sold her life estate to one James H. Prestige in 1859. Mrs. Turner died in Texas on September 4, 1906, and the plaintiffs in this suit are the heirs of Donalson F. N. Turner, Jr. After the conveyance to Prestige, he sold his interest to S. Gwin. Gwin failed to

pay the taxes on the land for the year 1874, and on the first Monday of February, 1875, the lands were legally sold for the taxes due for the year 1874; the state becoming the purchaser thereof. It is admitted that the sale for the taxes due for the year 1874 was a valid sale in all respects. Subsequently, on the 10th day of May, 1875, about three months after the first sale and purchase thereunder by the state, this same land was again sold for taxes under the abatement act of March 1, 1875, and again purchased by the state. On the 10th day of August, 1876, about eighteen months after the first sale and fifteen months after the second sale, and within the period of two years allowed at that time for redemption from tax sales, one Samuel Hickman procured from the auditor a deed conveying to him these lands. Hickman moved on the property and lived there for a long while, subsequently making a deed to G. Wood Magee, who now claims this property. The facts further show that some time in the year 1888 Hickman filed a bill in the chancery court for the purpose of confirming his tax title of the 10th of May, 1875, and not the tax title of February, 1875. The ejectment case at bar was submitted to the court below on agreed facts, and the court, sitting without a jury, found in favor of plaintiffs.

In our view of it there is but one question involved in this case, and this seems to have been settled by the case of *Shattuck* v. *Daniel*, 52 Miss., 834. The question is whether or not the payment of the taxes to the auditor by Samuel Hickman and procuring a deed to this tract of land from the state before the two years allowed for redemption by the owner expired, operated as a redemption of the land for the benefit of the owner. When this deed was made by the auditor, the state had no title which it could convey. The state had only an inchoate right, which would mature into a title two years from the date of its purchase, provided there was no redemption. This being the case, any payment of the tax by any person operated as a redemption of the land in favor of the owner. The state had no title, and it could convey none until the expiration

of the two years.   This was held in the cases of *Shattuck* v. *Daniel,* 52 Miss., 834, and *Faler* v. *McRae,* 56 Miss., 227.   In those cases it was held that the auditor had no authority to make a sale of lands held by the state for taxes until after two years from the date of purchase by the state, the period allowed for redemption.   It was further held that up to the expiration of this period the state has only an inchoate title, which will become absolute after two years, and if the auditor allow a person to. enter the land and become a purchaser before the expiration of this time, contrary to the statute, such purchaser, entering upon the land, obtains no title.   When this is done, the payment to the state of the money is simply a redemption of the land before the expiration of the statutory period of limitation, and operates for the benefit of the owner.   The *Shattuck case* is almost identical with the case presented now.   The attempted confirmation of the so-called tax title in the chancery court by Hickman in 1888, did not add any strength to his claim.   It is shown by the record that Mr. Hickman had no tax title to confirm, and the proceeding was a nullity, since the attempted sale of May 10, 1875, was void, and the payment of the tax to the auditor operated as a redemption and cancellation of the February tax title.   As there was no default in taxes, and no tax title to be confirmed, in 1888, it necessarily follows that a proceeding instituted for that purpose was a nullity.

But it is argued that this conveyance by the auditor necessarily conveyed such title as the state had, and that, though the sale of May 10, 1875, was void, yet the sale of February, 1875, was a valid sale, and, the owner of the land never having offered to redeem it at the expiration of two years, the state's title became perfected in Hickman.   We cannot yield assent to this contention.   The payment of the tax by Hickman operated as a redemption, and that left no sort of claim in the state which could máture into a title or be confirmed by any sort of proceeding.   There can be no life given to a void proceeding.

*Affirmed.*